UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIPONIO CONSTRUCTION CO., INC.,

       Plaintiff,

                                             Civil No. 10-10607
                                             Hon. Arthur J. Tarnow

       v.

INTERNATIONAL UNION OF BRICKLAYERS AND
ALLIED CRAFTWORKERS, LOCAL 9,

       Defendant,

       and

NATIONAL LABOR RELATIONS BOARD,

       Intervening Party.

_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE MAJZOUB'S REPORT
AND RECOMMENDATION GRANTING DEFENDANT AND INTERVENOR'S
MOTIONS TO DISMISS [31] AND REJECTING IN PART MAGISTRATE JUDGE'S
ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS [32]**

       The underlying dispute in this case is whether an employer has any obligations under the

National Labor Relations Act ("NLRA") to bargain with a union for a new collective bargaining

agreement ("CBA") following the termination of a prior CBA. Plaintiff DiPonio Construction

Company, Inc. ("DiPonio") asserts that because the now-terminated CBA between itself and

Defendant International Union of Bricklayers and Allied Craftworkers, Local 9 ("Union") was

entered into pursuant to section 8(f) of the NLRA, 29 U.S.C. § 158(f), it had no obligation under the

NLRA to bargain with the Union for a new CBA. The Union, on the other hand, contends that the

CBA is instead governed by section 9(a) of the NLRA, 29 U.S.C. § 159(a), and DiPonio was thus

required to bargain for a new CBA.

Although Plaintiff urges the Court to resolve this issue, as a threshold matter the Court must determine whether it has subject matter jurisdiction to do so. Presently before the Court is Plaintiff's Objection (Dkt. 33) to Magistrate Judge Majzoub's Report and Recommendation ("Report") (Dkt. 31) in which she recommends GRANTING Defendant Union and Intervenor National Labor Relations Board's ("NLRB") Motions to Dismiss (Dkts. 6, 22) for lack of subject matter jurisdiction and DENYING Plaintiff's Motion for Summary Judgment (Dkt. 4) as MOOT. Also before the Court is Defendant Union's Appeal From the Magistrate Judge's Order Denying Defendant Union's Motion for Sanctions ("Sanctions Order"). (Dkt. 34.) The matter has been fully briefed and the Court concludes that a hearing on these pending motions is unnecessary. *See* E.D. Mich. LR 7.1(f)(2).

For the reasons set forth below, the Court ADOPTS the Magistrate Judge's Report as to there being no subject matter jurisdiction and REJECTS IN PART the Magistrate Judge's Sanctions Order.

## I. BACKGROUND

### A. Facts and Procedural History

On or about July 31, 2009, the CBA between Plaintiff and the Union was terminated.[1]

---

[1] The termination provision of the CBA, Article XXV, provides:

> This agreement shall continue in full force and effect from **August 1, 2006 through July 31, 2009**. No more than ninety (90) days and not less than sixty (60) days before the expiration date of this Agreement, either party may give notice to the other that it desires to terminate or modify this Agreement, and upon receipt of such written notice the parties agree to meet and confer for purposes of attempting to negotiate a new Agreement.

> If neither party gives such notice to amend or terminate, this

Plaintiff allegedly refused to bargain for a new CBA which prompted the Union to file an unfair labor practice ("ULP") Charge with the NLRB on July 31, 2009. (Dkt. 8 ¶ 11.) The Charge asserts that Plaintiff failed to bargain with the Union as required by sections 9(a) and 8(a)(5) of the NLRA. (Dkt. 33, Ex. 2.) After investigating the Union's Charge, the NLRB filed an ULP Complaint against Plaintiff on February 16, 2010. (Dkt. 6, Ex. 3.) The NLRB's Complaint avers that DiPonio "has been failing and refusing to bargain collectively and in good faith with [the Union] as the exclusive collective bargaining representative of [certain] employees of [DiPonio], in violation of Section 8(a)(1) and (5) of the [NLRA]." (Dkt. 33, Ex. 3 at 5.)

On February 11, 2010, DiPonio filed the instant action. The one-count Complaint sought a declaration that Plaintiff properly terminated the CBA between itself and the Union. Therefore, there was no existing CBA between the parties. (Dkt. 1.) Less than two weeks after the Complaint was filed, Plaintiff moved for summary judgment on its declaratory judgment claim. (Dkt. 4.) In response, Defendant Union filed a Motion to Dismiss asserting that this Court lacks subject matter jurisdiction over that claim. (Dkt. 6.) Only after the Union filed its motion, did Plaintiff amend its Complaint to include a second count: a breach of contract claim. (*See* Dkt. 8.) The Amended Complaint asserts that this Court has subject matter jurisdiction over the breach of contract claim under section 301(a) of the Labor-Management Relations Act. (*Id.* ¶ 4.)

---

> Agreement shall remain in full force and effect from year to year thereafter, unless no more than ninety (90) and not less than sixty (60) days prior to any annual anniversary date, notice be given in writing by either party to the other, indicating a desire to amend or terminate on said annual anniversary date. . . .

(Dkt. 13, Ex. 3 at 18.) As will be discussed, neither party disputes that DiPonio provided the proper notice to terminate, or that the CBA was terminated on July 31, 2009.

On April 21, 2010, the NLRB filed a Motion to Intervene in the instant action "solely for the purpose of filing a motion to dismiss and apprising this Court of the significance of the Board's related proceedings." (*See* Dkt. 23 at 5.) Contemporaneously, the NLRB filed a Motion to Dismiss asserting that this Court lacks subject matter jurisdiction because Plaintiff's claims are representational in nature and therefore are within either the exclusive or primary jurisdiction of the NLRB. (*See* Dkt. 23 at 9-20.)

On April 23, 2010, Plaintiff asked the administrative law judge to stay the NLRB proceeding pending resolution of this suit. In that motion, Plaintiff argued, "If the NLRB proceedings are not stayed, it is possible that the District Court will reach one result and the NLRB will reach another. To avoid such inconsistent results, [the NLRB] proceeding should be stayed pending the decision of the District Court." (Dkt. 26, Ex. A.) The administrative law judge denied Plaintiff's motion to stay the NLRB proceeding on May 10, 2010. (Dkt. 26, Ex. C.)

On June 10, 2010, the Magistrate Judge issued an Order Granting NLRB's Motion to Intervene, and noted that the "issues in this action overlap with and may conflict with the issues raised in the NLRB Complaint." (Dkt. 30 at 3.) No objections to that Order were filed.

On June 23, 2010, the Magistrate Judge issued her Report regarding the pending Motions to Dismiss and for Summary Judgment. (Dkt. 31.) Plaintiff has filed its Objections to the Magistrate Judge's Report (Dkt. 33), Defendant Union and Intervenor NLRB have responded (Dkts. 36, 37), and Plaintiff has replied to those responses (Dkts. 38, 39).

Additionally, on March 29, 2010, Defendant Union filed a Motion for Sanctions asserting that "by any objective measurement [Plaintiff's] pleadings are frivolous." (Dkt. 14 at 1.) Plaintiff responded (Dkt. 20), and, on June 23, 2010, the Magistrate Judge issued an order denying the

motion, (Dkt. 32). On July 7, 2010, Defendant appealed that order (Dkt. 34), and Plaintiff has filed a timely response (Dkt. 35).

### B. The Underlying Representational Dispute

Under section 9(a) of the NLRA, employers are required to bargain with a union that has been "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes." 29 U.S.C. § 159(a). The NLRA, however, creates an exception for construction industry employers. Specifically, section 8(f) of the NLRA allows an employer in the construction industry to enter into a CBA with less than a majority of employees authorizing the union's representation. *Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 518 (5th Cir. 2007) (citing 29 U.S.C. § 158(f); *Nova Plumbing, Inc. v. NLRB*, 330 F.3d 531, 534 (D.C. Cir. 2003)). Further, and most relevant to the instant case, if the employer enters into a section 8(f) CBA, once the agreement expires, the parties have no duty to bargain with one another. *Id.* (citing *Nova*, 330 F.3d at 534). In contrast, under a section 9(a) CBA, "the employer must continue bargaining with a union . . . because the union is entitled to a continuing presumption of majority status." *Id.* (citing *Nova*, 330 F.3d at 534). In fact, section 8(a)(5) of the NLRA makes it an ULP for an employer to refuse to bargain with a section 9(a) employer. 29 U.S.C. § 158(a)(5); *see also Nova*, 330 F.3d at 533-34. The parties disagree as to whether the now-terminated CBA between DiPonio and the Union was a section 8(f) or 9(a) agreement, and thus, they dispute whether DiPonio has committed an ULP under section 8(a)(5) by refusing to bargain for a new contract after the termination of the previous CBA.

### C. The Present Jurisdictional Dispute

The threshold issue before the Court is whether the NLRB has exclusive, or at least primary,

jurisdiction to decide if DiPonio has a duty to bargain under section 8(a)(5) of the NLRA. In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959), the Supreme Court explained that where the conduct alleged is even "arguably" subject to section 7 or 8 of the NLRA, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board' and deem the claim preempted." *See also id.* at 244-45 (holding that "courts are not primary tribunals to adjudicate [representational] issues. It is essential to the administration of the [NLRA] that these determinations be left in the first instance to the [NLRB]").

Section 301(a) of the Labor-Management Relations Act ("LMRA") carves out an exception to the *Garmon* preemption doctrine. It provides that the federal district courts have jurisdiction, without regard to citizenship or amount in controversy, over "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a).

Plaintiff's Amended Complaint includes two Counts. Count I is framed as a declaratory action wherein Plaintiff asks this Court to declare that it properly terminated the CBA between it and Defendant, and that no CBA between the parties now exists. (Dkt. 8 ¶¶ 7-15.) Count II is couched as a breach of contract claim wherein Plaintiff asserts that Defendant breached the CBA by "fail[ing] to honor DiPonio's termination of the CBA, and instead attempted to force DiPonio to bargain for a new contract and to provide information." (*Id.* ¶¶ 19-20.)

The Union and NLRB argue that this Court lacks subject matter jurisdiction over both counts. As to Count I, they assert that *Garmon* preemption applies because "Count I essentially asks this Court to determine ULP matters now pending in the Board's proceeding—that is, whether DiPonio has a continuing duty to bargain with [the Union] under the NLRA." (Dkt. 23 at 13; *see also* Dkt. 36 at 2-3.) As to Count II, the Union and NLRB argue that the grant of jurisdiction under

section 301 of the LMRA does not apply because Count II does not state a colorable breach of contract claim, and even if it did, the dispute underlying Count II is not truly contractual but primarily or entirely representational. (Dkt. 23 at 13; *see also* Dkt. 36 at 12.)

DiPonio argues that this Court has subject matter jurisdiction over the two claims in its Amended Complaint because the "breach of contract [claim] does not fall under § 7 or § 8 of the NLRA" and because "[i]t is necessary and logical that before it can be determined whether an unfair labor practice occurred, it must first be determined whether there was any contractual obligation to bargain to being with." (Dkt. 33 at 7-8.) In short, Plaintiff argues that its claims are not preempted under *Garmon*, and this Court has subject matter jurisdiction pursuant to section 301(a) of the LMRA.

### D. The Magistrate Judge's Report

The Magistrate Judge's Report recommends that the Court find that the NLRB has exclusive jurisdiction over Count I of Plaintiff's Amended Complaint because, in substance, Plaintiff's "request is to clarify whether Plaintiff had a continuing duty to bargain with the Defendant Union" and therefore is a representational matter preempted under *Garmon*. (Dkt. 31 at 5.) As for Count II, the Report recommends that the Court find that even if Plaintiff's Amended Complaint raises a colorable breach of contract claim, the Court "should decline to exercise jurisdiction over this matter and instead defer to the jurisdiction and expertise of the NLRB." (*Id.*) For the following reasons, the Court ADOPTS the Report's recommendations.

## II. ANALYSIS OF PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### A. Legal Standards for a Motion to Dismiss for Lack of Subject Matter Jurisdiction

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A motion challenging the basis for a court's subject matter jurisdiction may be brought pursuant to Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986) (emphasis removed). In determining whether a plaintiff has carried its burden, a district court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction. *Id.* at 916; *RMI Titanium Co. v. Westinghouse Elec. Co.*, 78 F.3d 1125, 1134 (6th Cir. 1996). However, where, as here, a defendant argues that the complaint fails to allege facts sufficient to establish subject matter jurisdiction, the court accepts the allegations in the complaint as true. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

### B. Standard of Review of a Magistrate's Report

A district court must review *de novo* those portions of a Magistrate Judge's Report and Recommendation to which a specific objection has been made, and may accept, reject, or modify any of the Magistrate's findings or recommendations. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "However, the district court need not provide *de novo* review where the objections are . . . general. The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citations omitted).

**C.  Count I of Plaintiff's Amended Complaint is within the Exclusive Jurisdiction of the NLRB[2]**

Plaintiff has attempted to cast Count I as a claim that no contract exists.  It is true that in Count I, DiPonio avers that it "has filed this instant action for the Court to determine whether a contract exists between DiPonio and the Union." (Dkt. 8 ¶ 13.)  However, there is no dispute about whether the contract has been terminated; the Union concedes as much: "In the instant case, Diponio timely terminated the 2006-2009 CBA and is not bound to any successor CBA." (Defendant's Opp. to SJ, Dkt. 13 at 10.)  Indeed, the very basis for the Union's ULP Charge filed with the NLRB is that DiPonio has failed to bargain for a *new* contract as required by section 8(a)(5) of the NLRA. (*See* NLRB Charge, Dkt. 33, Ex. 2; NLRB Complaint, Dkt No. 33, Ex. 3 at 5.)  Moreover, Plaintiff itself has pled that the Union's Charge is premised on a termination of the CBA: "the Union filed a Charge with the [NLRB] complaining that DiPonio had engaged in an unfair labor practice by failing to bargain for a *new* contract." (Dkt. 8 ¶ 11 (emphasis added).)

As the Magistrate Judge correctly recognized, the essence of what DiPonio seeks in Count I is a declaration that it has no duty to bargain with the Union following the termination of the CBA. *See Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 292 (1971) ("Assuredly the proposition that [the employee's] complaint [against the Union] was not

---

[2]  Plaintiff does not appear to object to the Magistrate Judge's finding that Count I of its Amended Complaint falls within the exclusive jurisdiction of the NLRB under *Garmon.* Throughout its Objections, Plaintiff repeatedly argues that this Court has  jurisdiction to determine whether the Union breached the CBA. (Dkt. 33 at 6, 7, 9, 10.)  Count I, however, alleges no such breach—rather, DiPonio's breach of contract claim is Count II of its Amended Complaint.  Thus it is unclear on what basis, if any, Plaintiff has objected to the Magistrate Judge's recommended dismissal of Count I.  For this reason alone, *de novo* review of the Magistrate Judge's finding as to Count I is not required. *See Mira*, 806 F.2d at 637.  Nevertheless, the Court has independently concluded that Count I of Plaintiff's Amended Complaint must be dismissed for lack of subject matter jurisdiction.

subject to the exclusive jurisdiction of the NLRB because it charged a breach of contract rather than an unfair labor practice is not tenable. [*Garmon*] [p]re-emption . . . is designed to shield the system from conflicting regulation of conduct. It is the conduct [that the court will regulate], not the formal description of governing legal standards, that is the proper focus of concern [under *Garmon*]."); *Interior/Exterior Specialist Co. v. Local 334 of Laborers Int'l Union of N. Am.*, No. 06-14154, 2007 WL 851771, at *4 (E.D. Mich. Mar. 21, 2007) ("A plaintiff need not intend to state a claim of unfair labor practice in order to come within the exclusive jurisdiction of the NLRB. However, the essence of the complaint must involve some sort of interference with or coercion involving the right to organize and bargain collectively to fall within section 7 or 8 of the NLRA.").

Count I states, "DiPonio had no obligation to bargain for a new contract because it had properly terminated its CBA." (Dkt. 8 ¶ 12.) It further alleges, "DiPonio had no obligation to bargain for a new collective bargaining agreement." (*Id.* ¶ 15.) These allegations make clear that Count I presents a representational dispute: whether DiPonio has an "obligation to bargain" turns on whether a section 9(a) relationship exists. Essentially, Count I seeks a declaration that DiPonio has not committed an ULP under section 8(a)(5) of the NLRA for refusing to bargain with the Union. At the very least, it "arguably" seeks such a determination, and this is all that is required to trigger the exclusive jurisdiction of the NLRB. *Garmon*, 359 U.S. at 245; *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 754 (9th Cir. 1997) ("[O]nce a court determines that a plaintiff's claim alleges conduct that is 'arguably' or 'potentially' subject to § 7 or § 8 of the NLRA, the court is required to defer to the exclusive competence of the NLRB."); *cf. J.F. Edwards Constr. Co. v. Int'l Union of Operating Eng'rs, Local Union No. 150*, No. 03C6058, 2004 WL 1444874, at *2 (N.D. Ill. June 28, 2004) (finding that NLRB had exclusive jurisdiction where employer sought a

declaratory judgment that it had properly terminated the collective bargaining agreement with the defendant union, the determination of which turned on whether the CBA was a section 8(f) or 9(a) agreement).[3]

Accordingly, the Court ADOPTS the Magistrate Judge's recommendation that the NLRB has exclusive jurisdiction over Count I of Plaintiff's Amended Complaint.

### D. Count II of Plaintiff's Amended Complaint Is Within the Primary Jurisdiction of the NLRB

Count II of Plaintiff's Amended Complaint alleges that the Union breached the CBA by failing to "honor DiPonio's termination of the CBA, and instead attempt[ing] to bargain for a new contract." (Dkt. 8 at 3.) Because Count II is cast as a breach of contract claim, Plaintiff argues that it falls within the grant of jurisdiction provided by section 301(a) of the LMRA. *See* 29 U.S.C. § 185(a). Specifically, Plaintiff argues that the Magistrate Judge erred because she did not recognize that a question of contract interpretation is threshold in this case: "[u]nless the [CBA] is a § 9(a) [CBA] . . . there is no duty for DiPonio to bargain for a new Contract and the ULP Complaint is moot." (Dkt. 33 at 4.) Plaintiff further asserts that "[t]he issues before this Court are purely contractual in nature, do not fall under § 7 or § 8 of the [NLRA], and must necessarily be decided by this Court." (Dkt. 33 at 8.) For the following reasons, the Court rejects Plaintiff's characterization that Count II is "purely" contractual and that this Court should exercise jurisdiction over that claim under section 301 of the LMRA.

---

[3] Although not argued by Plaintiff, Count I does not implicate the grant of jurisdiction under section 301(a) of the LMRA because it does not allege a violation of a contract. *See Textron Lycoming Engine Div. v. UAW*, 523 U.S. 653, 656 (1998) ("By its terms, [section 301(a) of the LMRA] confers federal subject-matter jurisdiction *only* over '[s]uits for violation of contracts.'" (emphasis added)).

Where a party's conduct gives rise to both a charge of an unfair labor practice under the NLRA and a claimed breach of a collective bargaining agreement under section 301, the NLRB and the district court share concurrent jurisdiction. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004). Recently, the Sixth Circuit Court of Appeals explained that it is inappropriate for a federal court to assert its jurisdiction in this shared jurisdictional space when the matter is primarily representational:

> this court has drawn the following dichotomy between disputes implicating the exclusive initial jurisdiction of the Board under *Garmon* and those implicating the concurrent jurisdiction of the federal courts under § 301. When a dispute is "primarily representational" under § 7 or § 8 of the National Labor Relations Act, "simply referring to the claim as a 'breach of contract' [is] insufficient for the purposes of § 301 federal courts' jurisdiction," but "matter[s] primarily of contract interpretation, whi[ch] potentially implicat[e] representational issues," remain within the federal courts' § 301 jurisdiction.

*Int'l Bhd. of Elec. Workers, Local 71 v. Trafftech, Inc.*, 461 F.3d 690, 694-95 (6th Cir. 2006) (alterations in original) (citing *Paper Workers Int'l Union v. Air Prods. & Chems., Inc.*, 300 F.3d 667, 672, 675 (6th Cir. 2002)).

The Court of Appeals in *Trafftech* further explained that there are "two types of situations in which a dispute will be treated as primarily representational." 461 F.3d at 695. The first is where "the Board has already exercised jurisdiction over a matter and is either considering it or has already decided the matter." *Id.* The second is where a court cannot determine whether there has been a violation of a CBA without first deciding an issue in the representational area. *Id.*

The instant facts fit both situations described by the *Tafftech* court. First, there is a pending NLRB proceeding that would address the dispute underlying Plaintiff's breach of contract claim: whether DiPonio had a duty to bargain with the Union. *See id.* (citing *Iowa Elec.*, 668 F.2d at 420);

*Int'l Bhd. of Boilermakers v. Olympic Plating*, 870 F.2d 1085, 1089 (6th Cir. 1989) (holding that breach of contract claim should be preempted to the NLRB's jurisdiction where there was a pending NLRB proceeding; reasoning that where "the Board's resolution of non-contractual issues could also resolve the controversial breach of contract claims brought under § 301, the federal courts should decline to exercise jurisdiction over the contractual allegations."). Not only is there a pending NLRB proceeding, but the NLRB has taken the further step of intervening in the instant action to inform the Court of that proceeding and assert its jurisdiction over the instant dispute.[4]

Second, in order to grant Plaintiff the relief it seeks, this Court would have to determine the central issue before the NLRB: whether Plaintiff and Defendant have entered into a section 9(a) CBA. If so, the Union could not have breached the CBA by "forc[ing]" Plaintiff to bargain because Plaintiff would have had a legal obligation to do so under section 8(a)(5) of the NLRA. Accordingly, it is appropriate to classify the instant dispute as primarily representational. *See Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1253 (4th Cir. 1988) (noting that where "the [district] court could not possibly determine whether there has been a violation of the collective bargaining agreement without first deciding whether the union was elected as the employees' bargaining representative," it should not exercise jurisdiction under section 301 of the LMRA (internal quotation marks omitted)).

Instead of addressing the "primarily representational" analysis presented in *Trafftech*,

---

[4] Moreover, the NLRB has denied Plaintiff's motion to stay the administrative proceeding pending resolution of this action. *Cf. Trafftech*, 461 F.3d at 695-96 (finding that neither of the two primarily representational situations applied "*because the [NLRB] chose to defer exercising jurisdiction over the dispute* and because the arbiter need not resolve the representational dispute to determine whether [the employer] has violated its collective bargaining agreement." (emphasis added)).

Plaintiff asserts that *Interior/Exterior Specialist Co. v. Local 334 of Laborers Int'l Union of N. Am.*, No. 06-14154, 2007 WL 851771 (E.D. Mich. Mar. 21, 2007) supports its claim that "an employer must bring claims of breach of a [CBA] in the federal district court, and not in the NLRB." (Dkt. 33 at 8.) That facts of that case, however, are distinguishable from those presently before the Court. In *Interior/Exterior*, the plaintiff-employer brought a breach of contract claim against the defendant-union alleging that the union violated a number of obligations under the CBA, including, "providing untrained and unqualified workers," "permitting other union contractors to bid at rates lower than those prescribed by the CBA," "permitting non-union contractors to perform work on union jobs," and "directing the pension funds to collect fringe benefit contributions for workers and projects not covered by the CBA." 2007 WL 851771, at *2. After reviewing Sixth Circuit cases involving ULP practice claims under section 8(b) of the NLRA, the court reasoned that the alleged contractual violations did not implicate the practices prohibited by that section:

> The nature of the claims in this case are much different than the types of [section 8(b)] actions set out above. There is *no suggestion* in the complaint that the defendant breached the CBA or otherwise interfered with, defamed, or discriminated against the plaintiff for the purpose of coercing union participation, engaging in secondary boycotts, *refusing to bargain in good faith*, or otherwise undermining the industrial peace that [section 8(b) of the] NLRA was designed to preserve. *None of [plaintiff's] claims fits within the boundaries of section 8.* Instead, [plaintiff's] claims belong in a federal court because they allege either breach of the CBA or require analysis of the underlying contract.

*Id.* at *5 (emphases added). In contrast, in this case, Plaintiff's Amended Complaint at least suggests that the fundamental dispute is whether DiPonio has refused to bargain in good faith as required by section 8 of the NLRA. The "breach" that DiPonio alleges in Count II is that the Union forced Plaintiff to bargain for a new contract. (Dkt. 8 ¶ 19.) But, as explained, the basis for the

14

Union's conduct is that section 8(a)(5) of the NLRA imposes a duty on DiPonio to bargain with a section 9(a) union. Because Plaintiff's breach of contract claim turns on the underlying representational dispute, Plaintiff's claim of breach is distinguishable from the alleged contractual violations in *Interior/Exterior* which did not "fit within the boundaries of section 8." *See id.* Moreover—and critically—*Interior/Exterior* did not involve a pending NLRB proceeding, which, as discussed, justifies yielding to the NLRB's jurisdiction where, as here, "the Board's resolution of non-contractual issues could also resolve the controversial breach of contract claim[] brought under § 301." *See Olympic Plating*, 870 F.2d at 1089.

DiPonio also asserts that the emphasized language in the following passage from *Litton Financial Printing Div. v. N.L.R.B.* requires that this Court adjudicate its breach of contract claim:

> Although the Board has occasion to interpret collective-bargaining agreements in the context of unfair labor practice adjudication, the Board is neither the sole nor the primary source of authority in such matters. "*Arbitrators and courts are still the principal sources of contract interpretation.*" . . . We would risk the development of conflicting principles were we to defer to the Board in its interpretation of the contract, as distinct from its devising a remedy for the unfair labor practice that follows from a breach of contract. We cannot accord deference in contract interpretation here only to revert to our *independent interpretation of collective-bargaining agreements in a case arising under § 301 [of the LMRA].*

501 U.S. 190, 202-03 (1991) (citations omitted, emphases added).

DiPonio's reliance on this passage is misplaced. Neither the NLRB nor Defendant Union disputes that arbitrators and courts remain the principal sources of contract interpretation, or that federal courts must engage in independent interpretation of collective-bargaining agreements in a case arising under § 301. *See id.* Rather, the NLRB and the Union's position is that Count II of Plaintiff's Amended Complaint is disguised as a breach of contract claim but, in fact, requires this

Court to resolve a representational issue within the jurisdiction of, and presently pending before, the NLRB. The Court agrees. The dispute before the Court is primarily representational.

Accordingly, the Court ADOPTS the Magistrate Judge's recommendation that even if Count II is a colorable breach of contract claim, it is appropriate to defer to the jurisdiction of the NLRB.

## III. DEFENDANT'S APPEAL OF THE MAGISTRATE JUDGE'S SANCTIONS ORDER

Defendant Union also seeks sanctions in the form of attorney fees, pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and this Court's inherent powers. (Dkt. 34 at 1.) Defendant contends that Plaintiff's Complaint and Amended Complaint were filed to circumvent the NLRB's jurisdiction. (*Id.*) Defendant further argues that sanctions are warranted "because by any objective measurement [Plaintiff's] pleadings are frivolous." (*Id.*) In response, Plaintiff argues that "prevailing in a dismissal does not equate to being entitled to sanctions." (Dkt. 35 at 8.) Plaintiff further asserts that this Court must give deference to a Magistrate's order denying sanctions, (*Id.* at 4-6), and Defendant has failed to object to the Magistrate Judge's Order with specificity, (*Id.* at 8).

### A. Additional Facts Relevant to Defendant Union's Motion for Sanctions

On February 11, 2010, DiPonio filed a one-count Complaint which sought a declaration that there was no existing contract between Plaintiff and Defendant. On February 16, 2010, the NLRB filed an ULP Complaint against Plaintiff, and less than a week later, Plaintiff moved for summary judgment in the instant case.

On February 24, 2010, Defendant and Plaintiff's counsel exchanged emails regarding the jurisdictional dispute in this case. Defendant's counsel informed Plaintiff's counsel that this Court did not have jurisdiction over Plaintiff's declaratory judgment claim because "of the doctrine of

NLRA preemption," and because "the [Declaratory Judgment Act] is a procedural statute that does not act as a substantive grant of jurisdiction." (Dkt. 14 at Ex. A.) That email also informed Plaintiff's counsel that Defendant would seek fees and costs under Rule 11 and 28 U.S.C. § 1927. (*Id.*) Plaintiff's counsel responded with the argument analyzed and rejected above: "the issues of whether DiPonio terminated its contract and whether it was a § 8(f) or § 9(a) contractor are purely legal in nature" and thus within this Court's jurisdiction. (*Id.*) Defendant's counsel then replied with his second email of the day, this time citing the Supreme Court's decision in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959), and explaining that "you cannot maintain a federal lawsuit over matters that are subject to the Board's jurisdiction under the NLRA preemption doctrine." (*Id.*) Later that same day, February 24, 2010, Defendant filed its Motion to Dismiss based on lack of subject matter jurisdiction and, pursuant to its obligations under Fed. R. Civ. P. 11(c)(2), served a draft sanctions motion on Plaintiff.

About a week after the Defendant's Motion to Dismiss was filed, on March 2, 2010, DiPonio filed its Amended Complaint where it added a breach of contract claim and asserted section 301(a) of the LMRA as the basis for this Court's jurisdiction over that claim. (*See* Dkt. 8.) That same day, Defendant's counsel sent an email to Plaintiff's counsel asserting that the new breach of contract claim is "frivolous because you do not and cannot allege a breach [and] you do not cite a contract provision that was breached." (Dkt. 14 at Ex. A.) The letter also argued that the jurisdiction grant under section 301 of the LMRA did not apply because the Union was only attempting to "force" DiPonio to bargain for a new CBA insofar as it believed DiPonio had a duty to bargain under the NLRA. (*Id.*)

After the 21 day safe harbor set forth by Fed. R. Civ. P. 11(c)(2) expired, Defendant Union

filed its Motion for Sanctions.  (Dkt. 14.)  The Magistrate Judge denied the motion (Dkt. 32), and Defendant has appealed that order to this Court (Dkt. 34).

### B.  Legal Standards

Rule 11 permits a district court to impose sanctions against an attorney or party who has filed and signed a pleading or motion "if the court concludes that it was filed for any improper purpose and it has no basis in law or fact."  *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 778 (6th Cir. 1996) (citing *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 541-46 (1991)).  Under Rule 11, an attorney has an obligation "'to conduct a reasonable inquiry ino the law and facts before signing pleadings, written motions and other documents.'  If an attorney fails to meet this obligation . . . he is subject to sanctions sufficient to meet the deterrent goals of Rule 11."  *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 401 (6th Cir. 2009) (quoting Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendments).  Further, while Rule 11 "is not intended to be a compensatory mechanism in the first instance, it is equally clear that effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation."  *Id.* at 400.

As Plaintiff correctly points out, where, as here, a magistrate judge has issued a non-dispositive order, the district court reviews the order under the "clearly erroneous or contrary to law" standard. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Where a magistrate judge denies sanctions, this Court reviews the denial for an "abuse of discretion."  *See Van Emon v. State Farm Mut. Auto. Ins., Co.*, 05-72638, 2008 WL 205243, at *1 (E.D. Mich. Jan. 24, 2008); *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) ("Where the relevant legal standard under the Federal Rules of Civil Procedure requires the decision-maker to 'do justice' or balance

18

the interests at stake, the magistrate judge's decision will be reversed only on a showing of an abuse

of discretion."). A judge abuses her discretion if she bases her ruling on "an erroneous view of the

law or a clearly erroneously assessment of the evidence." *See Rentz*, 556 F.3d at 395 (citing *Ridder*,

109 F.3d at 293).

### C. The Magistrate Judge's Sanctions Order

The Magistrate Judge denied Defendant's Motion for Sanctions. She reasoned that a federal

district court has (1) jurisdiction over claims based on violations of a contract under § 301 of the

LMRA, and (2) concurrent jurisdiction with the NLRB over "claims which give rise to both a charge

of an unfair labor practice under the NLRA and a claimed breach of a [CBA] under § 301," and

because Plaintiff advanced these two arguments, sanctions under Rule 11 were not warranted. (Dkt.

32 at 3.) As to the Union's argument for sanctions under 28 U.S.C. § 1927, the Magistrate Judge

concluded that she could not "find that the Plaintiff has unreasonably and vexatiously multiplied the

proceedings in this case, or clearly fallen short of obligations owed to a member of the bar."[5] (*Id.*

at 4.)

### D. Defendant Union's Objections to the Magistrate Judge's Sanctions Order

The Union argues that the Magistrate Judge erred by failing to address the fact that Count

II of Plaintiff's Amended Complaint asserts that Defendant breached a contract *after* it was

---

[5] Because the Court finds that the Union should be awarded sanctions under Rule 11, it is unnecessary to address Defendant's arguments and the Magistrate Judge's Order as they pertain to sanctions under 28 U.S.C. § 1927 or this Court's inherent powers. *See Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 939 n.17 (6th Cir. 2002) ("The district court also could have required the [plaintiff's] attorney personally to pay any excess costs, expenses or attorneys' fees incurred by the defendants because of conduct that 'multiplie[d] the proceedings in [the] case unreasonably and vexatiously.' 28 U.S.C. § 1927. However, because Rule 11 adequately provides for the attorney costs and fees in this case, we need not address § 1927.").

terminated. (Dkt. 34 at 24-25.) Defendants are correct that the Magistrate Judge did not address this fact in her Sanctions Order, and the Court finds it particularly relevant to the sanctions inquiry.[6] In both counts of Plaintiff's Amended Complaint, DiPonio avers that it has properly terminated the CBA. (Dkt. 8 ¶¶ 12, 17-18.) As discussed, the Union agrees that the CBA has been terminated; in fact, the Union's NLRB Charge is premised on the CBA being terminated. In its Amended Complaint, Plaintiff has cited no CBA provision that Defendant allegedly breached, and the Court finds it untenable, absent a citation to a specific contractual provision to the contrary, or an allegation of a right vested prior to termination, that the Union could breach the CBA *after* it was terminated. *See Marquez Bros. Intern., Inc. v. Atletico Morelia S.A. De C.V.*, No. 05-1889, 2005 WL 1869501, at *6 (N.D. Cal. Aug. 5, 2005) ("It is impossible to breach an expired contract."). Thus, on its face, Count II of Plaintiff's Amended Complaint indicates that it was filed without a basis in law. This likelihood becomes near certainty when one considers the circumstances in which the Amended Complaint was filed.

Before Plaintiff filed its Amended Complaint, Defendant had repeatedly informed Plaintiff that Count I of the original Complaint was preempted under *Garmon*. Plaintiff was undeterred, however, and proceeded to amend its Complaint to include a new breach of contract claim with

---

[6] In DiPonio's Response to the Union's Appeal From Magistrate's Order Denying Sanctions, Plaintiff points out that

> it is very difficult to respond to Defendant's brief, as not only does it fail to establish the applicable standard of review, but it also fails to properly identify the factual findings it is disputing as well as the legal conclusions being disputed. . . . Defendant has simply renewed its Motion for Sanctions arguments.

(Dkt. 35 at 6.) Defendant has, however, sufficiently identified arguments that the Magistrate did not address, and therefore, it is proper to consider those objections.

section 301(a) of the LMRA as the jurisdictional basis. Before filing this Amended Complaint, however, a reasonable attorney, whose basis for jurisdiction had been called into question by *Garmon*, would have researched the interplay between section 301 and *Garmon*. *See Rentz*, 556 F.3d at 401 (noting that Rule 11 requires an attorney "to conduct a reasonable inquiry into the law and facts before signing pleadings." (internal quotation and citation omitted)); *E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church and School*, 597 F.3d 769, 776 (6th Cir. 2010) ("In response to a Rule 12(b)(1) motion, the plaintiff bears the burden of proving jurisdiction."). Plaintiff's failure to discuss the analysis presented in *Trafftech* in its numerous briefs, even after being alerted to that case by the NLRB's Motion to Dismiss (*see* Dkt. 23 at 19), supports the conclusion that Plaintiff did not conduct a "reasonable inquiry" into the law prior to amending its Complaint.

Finally, it appears that the Magistrate Judge did not account for the fact that the NLRB had filed an ULP Complaint against Plaintiff just two weeks before Plaintiff filed its Amended Complaint in this action. (*See* Dkt. 32 at 3.) And although her Sanctions Order mentions that Plaintiff's motion for summary judgment came on the heels of initiating this suit (*id.* at 2), that fact appears to have had little, if any, bearing on her Rule 11 analysis.[7] However, the timing of the summary judgment motion and Amended Complaint—combined with the fact that Count II appears frivolous—leads to the conclusion that the purpose of Plaintiff's pleadings was to stall the NLRB proceeding. Indeed, Plaintiff moved to stay that proceeding pending the outcome of the instant action.

---

[7] As discussed, the Magistrate Judge concluded that Plaintiff should not be sanctioned because Plaintiff argued (1) this Court has concurrent jurisdiction with the NLRB under section 301, and (2) that this Court has jurisdiction over an alleged breach of a CBA. (Dkt. 32 at 3.)

Because the Magistrate Judge's Sanctions Order does not reflect that she properly considered (1) whether Count II of Plaintiff's Amended Complaint had any basis in law or fact given that it asserts breach of a terminated contract, (2) that Plaintiff had been alerted to *Garmon* preemption before filing its Amended Complaint, (3) that there was a pending motion to dismiss at the time the Amended Complaint was filed, or (4) the timing of Plaintiff's filings in relation to the ongoing NLRB proceeding, the Court finds that the Magistrate Judge abused her discretion in denying sanctions under Rule 11. Accordingly, the Court REJECTS IN PART the Magistrate Judge's Order Denying Defendant Union's Motion for Sanctions.

### E. The Appropriate Remedy

Defendant seeks $6,593.75 in fees for 52.75 hours spent responding to Plaintiff's pleadings. The total is based on a rate of $125/hour, which Defendant's counsel declares is discounted for the Union. (Dkt. 14, Ex. B. ¶ 4.) Of these 52.75 hours, however, 21.75 are attributable to work performed prior to the filing of Plaintiff's Amended Complaint. (*See* Dkt. 14, Ex. B.) Although Plaintiff's original Complaint was problematic in its own right, it was filed before the NLRB ULP Complaint, and before Defendant informed Plaintiff of *Garmon* preemption. The Court cannot conclude that the Magistrate Judge abused her discretion in finding that the original Complaint was not frivolous. However, the Court finds that it was unreasonable for an attorney to file an Amended Complaint to assert a beach of contract claim on a terminated contract without adequately researching section 301 case law. The Court awards Defendant's counsel fees for the 31 hours of work they performed after Plaintiff filed its Amended Complaint. At a rate of $125/hour, the total sanction is $3,875.00. This reduction from Defendant's requested amount is further justified because $3,875.00 is adequate to deter similar conduct in the future. *See* Fed. R. Civ. P. 11(c)(4)

("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").[8]

## IV. CONCLUSION

For the reasons set forth above, the Court ADOPTS the Magistrate Judge's Report and Recommendation (Dkt. 31) and OVERRULES Plaintiff's Objections (Dkt. 33). Accordingly, Defendant Union and Intervenor NLRB's Motions to Dismiss (Dkts. 6, 22) are GRANTED and Plaintiff DiPonio's Motion for Summary Judgment (Dkt. 4) is DENIED as MOOT. Plaintiff's Amended Complaint is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

Further, the Court REJECTS IN PART the Magistrate Judge's Order Denying Defendant Union's Motion for Sanctions (Dkt. 32) and GRANTS IN PART Defendant Union's Appeal of the Magistrate Judge's Order Denying Defendant Union's Motion for Sanctions (Dkt. 34). Accordingly, SANCTIONS are imposed against Plaintiff's counsel in the amount of $3,875.00. This amount is to be paid to Defendant's counsel within thirty (30) days of the issuance of this Opinion and Order.

**IT IS SO ORDERED.**

Date:   September 22, 2010               s/ Arthur J. Tarnow
                                        Arthur J. Tarnow
                                        Senior United States District Judge

---

[8] Defendant has not made it clear whether it seeks costs. Costs are mentioned in passing (Dkt. 14 at 1) but the "Conclusion" of Defendant's memorandum in support of its Motion for Sanctions states that fees are sufficient: "[the Union] seeks $6,593.75 in fees for 52.75 hours spent responding to [Plaintiff's pleadings]. *The $125.00 hourly rate and hours sought by in this motion is well within the range of reasonableness and are an appropriate sanction to both deter such conduct and to compensate the defendant*." (Dkt. 14 at 15 (emphasis added); *accord* Dkt. 34 at 28-29.) Accordingly, costs are excluded from the sanction.

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on September 22, 2010, by U.S. first class mail or electronic means.

_s/ Lisa M. Ware_____
Case Manager